In re Richard Owen Taylor















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-127-CV

IN RE RICHARD OWEN TAYLOR

 

 Original Proceeding
                                                                                                                

O P I N I O N
                                                                                                                

      Taylor brings this mandamus proceeding complaining about the trial court's rulings on pretrial
matters. Taylor is incarcerated. He sought to appear in person at the pre-trial hearing. That was
denied. He sought to appear by telephone conference. That was denied. After communicating
with the warden, the trial court ordered that Taylor appear for the pre-trial by affidavit. Taylor
argues that affidavits were not an effective means of appearance and the trial court should have
allowed additional time for him to prepare and submit affidavits, given the late notice that he
received that he would not be allowed to appear by telephone. He has not explained to us what
he would have included in affidavits that he claims he did not have time to submit. 
      We have carefully considered the current state of the record presented to us in this mandamus
proceeding. It does not appear that any erroneous pre-trial ruling regarding the motions about
which Taylor is complaining in this mandamus proceeding could not be reviewed and appropriate
relief granted on direct appeal from an adverse judgment. Accordingly, Taylor is not entitled to
a mandamus review of the trial court's actions.
      Petition for writ of mandamus is denied.

                                                                   PER CURIAM

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Writ denied
Opinion delivered and filed August 7, 2002
Do not publish
[CV06]



n Young Texans daycare which was owned by
his wife. Katherine, a first-grader, attended the daycare.
      On President’s Day (February 16) 1998, Katherine was in the after-school group. Most of
the children were watching television in the central room. Katherine, however, was alone with
appellant towards the back of the daycare.
      Sheri Handley, who worked at the daycare, was up front in the office. She answered the
telephone and the caller asked to speak to appellant. Ms. Handley went to find him. When
Ms. Handley walked toward the back, she found appellant alone with Katherine. She was
unable to see them until she walked in on them. Appellant appeared startled to see Ms.
Handley. She told him about the phone call and he told her to say he was unavailable.
      Ms. Handley saw Katherine’s hand on the crotch of appellant’s pants and she was
squeezing and counting. Ms. Handley was shocked and went back up front.
      Later, Ms. Handley saw Katherine crying. When she asked what was wrong, Katherine
told her she hated appellant because he was mean to her. Ms. Handley asked how, and
Katherine stated because he touched her. When asked where the touch was, Katherine pointed
to her genital area and said “right here.”
      Ms. Handley saw Barbara Brewer who worked in the office and signaled for her to come
to her. Katherine repeated what she had told Ms. Handley. Ms. Brewer stated that Katherine
said that when she was counting, it was for the number of times she would squeeze appellant’s
private. Katherine showed Ms. Brewer a dollar bill appellant had given her that day for
squeezing him one hundred times.
      Katherine testified that appellant touched her “private” which she indicated was her word
“for genitals in the front.” Using an anatomically correct doll, she showed the jury how
appellant touched her. She also testified appellant would have her touch his “private,”
meaning his “crotch area.” She demonstrated this to the jury on an anatomically correct doll.
      Witnesses testified Katherine was one of appellant’s favorites, that she sat on his lap often,
that he gave her money for candy, and that she often accompanied him to do chores in the
daycare away from the other children.
      Additionally, there was testimony that appellant had molested other children at the
daycare. Another child, Brittany, testified appellant had fondled her.
      The jury found appellant guilty and assessed him 14 years in prison.
      By other counsel, appellant appeals on four points of error.
      In his first and second points, appellant contends the evidence is not legally and factually
sufficient to support his conviction.
      In reviewing the legal sufficiency, we view the evidence in the light most favorable to the
verdict, and ask whether any rational trier of fact could have found beyond a reasonable doubt
all the elements of the offense. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Williams v.
State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); Santellan v. State, 939 S.W.2d 155, 160
(1997).
      In reviewing a claim of factual insufficiency of the evidence, we view all the evidence
without the prism of “in the light most favorable to the prosecution.” Clewis v. State, 922
S.W.2d 126, 131-132 (Tex. Crim. App. 1996); Santellan v. State, 939 S.W.2d 155, 164-165. 
This court will review all the evidence and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. State, 955
S.W.2d 404, 410 (Tex. Crim. App. 1997); Santellan v. State, p. 164.
      Appellant operated and worked in a daycare owned by his wife. The victim of the
offense, Katherine, testified that appellant “touched her private” when she was in the daycare. 
Using an anatomically correct doll, she showed the jury how appellant touched her. She also
testified appellant had her touch his “private,” and demonstrated this on an anatomically
correct doll.
      Ms. Handley, a worker in the daycare, testified she received a phone call for appellant. 
When she went to find him, she discovered that he and Katherine were away from the other
children and that Katherine had her hand on the crotch of his pants squeezing and counting. 
Later, Katherine was crying and told Handley that appellant fondled her. Ms. Brewer, another
worker, testified she was present when Katherine made her outcry. Katherine showed Ms.
Brewer a dollar bill appellant had given her for squeezing him one hundred times. There was
testimony Katherine was one of appellant’s favorites, that she often sat on his lap, that he gave
her money for candy, and that she went with him to do chores away from the other children.
      Another child, Brittany, testified that appellant had fondled her.
      Appellant testified he did not commit the offense. He admitted that Katherine sat on his
lap, was one of his favorites, and that he sometimes gave her money. Dr. Baker, a
psychologist, testified that Katherine and Brittany may have been influenced by improper
questioning about abuse. A former client of the daycare testified she would use appellant’s
daycare again if it reopened.
      We hold the evidence both legally and factually sufficient to support appellant’s
conviction. Appellant’s first and second points are overruled.
      In his third and fourth points of error, appellant contends that his trial counsel provided
ineffective assistance.
      The applicable law on ineffective assistance of counsel is stated in Thompson v. State, 9
S.W.3d 808, 812-13 as follows:
                  Texas courts adhere, as we must, to the United States Supreme Court’s
two-pronged Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), test to determine whether counsel’s representation was
inadequate so as to violate a defendant’s Sixth Amendment right to counsel. 
Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The
defendant must first show that counsel’s performance was deficient, i.e., that
his assistance fell below an objective standard of reasonableness. McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), cert denied, 519
U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); Ex Parte Menchaca,
854 S.W.2d 128, 131 (Tex. Crim. App. 1993). Second, assuming Appellant
has demonstrated deficient assistance, it is necessary to affirmatively prove
prejudice. McFarland v. State, 928 S.W.2d at 500. In other words,
appellant must show a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. 
A reasonable probability is a probability sufficient to undermine confidence
in the outcome. Hernandez v. State, 726 S.W.2d at 55. This two-pronged
test is the benchmark for judging whether counsel’s conduct so undermined
the proper functioning of the adversarial process that the trial cannot be relied
on as having produced a reliable result. McFarland v. State, 845 S.W.2d
824, 843 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 963 113 S.Ct.
2937, 124 L.Ed.2d 686 (1993).
 
The assessment of whether a defendant received effective assistance of
counsel must be made according to the facts of each case. Ex Parte Scott,
581 S.W.2d 181, 182 (Tex. Crim. App. 1979). Any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. McFarland v. State,
928 S.W.2d at 500. Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness claim. Ibid. 
Absent both showings an appellate court cannot conclude the conviction
resulted from a breakdown in the adversarial process that renders the result
unreliable. Ex Parte Menchaca, 854 S.W.2d at 131. Appellant bears the
burden of proving by a preponderance of the evidence that counsel was
ineffective. Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). 
An appellate court looks to the totality of the representation and the particular
circumstances of each case in evaluating the effectiveness of counsel. Ex
Parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). However,
while this Court has been hesitant to “designate any error as per se
ineffective assistance of counsel as a matter of law,” it is possible that a
single egregious error of omission or commission by appellant’s counsel
constitutes ineffective assistance. Jackson v. State, 766 S.W.2d 504, 508
(Tex. Crim. App. 1985) (failure of trial counsel to advise appellant that judge
should assess punishment amounted to ineffective assistance of
counsel)(modified on other grounds on remand from U.S. Supreme Court,
Jackson v. State, 766 S.W.2d 518 (Tex. Crim. App. 1988)). See also Ex
Parte Felton, 815 S.W.2d at 735 (failure to challenge a void prior conviction
used to enhance punishment rendered counsel ineffective). This position
finds support in opinions of the United States Supreme Court, which has also
held that a single egregious error can sufficiently demonstrate ineffective
assistance of counsel. Murray v. Carrier, 477 U.S. 478 106 S.Ct. 2639,
2649, 91 L.Ed.2d 397 (1986); United States v. Cronic, 466 U.S. 648, 104
S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984). When handed the task of
determining the validity of a defendant’s claim of ineffective assistance of
counsel, any judicial review must be highly deferential to trial counsel and
avoid the deleterious effects of hindsight. Ingram v. State, 679 S.W.2d 503,
509 (Tex. Crim. App. 1984). There is a strong presumption that counsel’s
conduct fell within the wide range of reasonable professional assistance. 
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d
674 (1984); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

      Appellant’s first allegation of ineffective assistance is that appellant’s counsel had
appellant swear that he had never been convicted of a felony and requested the jury to consider
community supervision if convicted. The offense charged is an offense for which community
supervision is not permitted. Tex. Code Crim. Proc. Ann. art. 42.12. See 3g(c) Indecency
with a Child.
      Appellant argues that trial counsel’s advice to appellant and execution of documents
placing probation before the jury demonstrates that counsel was ineffective and unfamiliar with
both the pertinent facts and the law required of reasonably competent counsel.
      Appellant’s second allegation of ineffective assistance is the failure of trial counsel to
object to testimony of Ms. Handley when she testified that a child, T.J. Warner, said to her,
“Mr. Tom and Katie are doing it in the bathroom.” Appellant argues that this was
inadmissible hearsay and should have been objected to.
      Appellant’s third complaint as to ineffective assistance is that Ms. Handley was allowed to
testify without objection that Katherine had told another teacher the same things that Katherine
had told her.
      Appellant’s fourth complaint is that defense counsel offered the videotaped testimony of
Brittany and after offering same, stated he desired to recall Dr. Baker to discuss the video, and
admitted he had no idea what Dr. Baker would testify to. Appellant contends defense counsel
was unfamiliar with the rules of evidence and offered evidence harmful to appellant which he
was then obliged to try to knock down.
      Appellant’s fifth complaint is that trial counsel called appellant as a witness and asked him
what his role was, to which appellant responded that his role was to be a model, a father figure
to the children. When appellant was cross-examined, the court ruled that the door had been
opened for the State to ask appellant about several extraneous offenses. Appellant asserts that
had trial counsel acted competently, the door would not have been opened to inquire of him
about the extraneous offenses.
      Finally, appellant asserts that defense counsel stated to the court he was calling a witness,
Matt Baker, who would testify as to the reputation for truthfulness of Sheri Handley. Baker,
when inquired of outside the presence of the jury, denied any knowledge of Ms. Handley’s
reputation. As a result, Baker was never put on the witness stand. Appellant asserts this
demonstrates trial counsel’s unpreparedness.
      Appellant has not shown how the result of the trial would have been any different but for
the six complaints of ineffectiveness of his counsel.
      Moreover, all of the allegations of ineffective assistance must be examined in the light of
the totality of counsel’s representation.
      In this case, counsel conducted a voir dire, cross-examined the State’s witnesses, called
witnesses on appellant’s behalf, and made a strong closing argument. Appellant obtained a
lower sentence than that being sought by the State or allowed by law. Appellant has failed to
establish that but for his counsel’s alleged ineffectiveness, the result of the proceeding would
have been different.
      Appellant’s third and fourth points are overruled.
      The judgment is affirmed.


                                                                   FRANK G. McDONALD
                                                                   Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Gray, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed July 12, 2000
Do not publish